IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christopher Harrigan,                                    Case No. 3:07 CV 3769

                             Plaintiff,        MEMORANDUM OPINION
                                       AND ORDER

     -vs-

                                      JUDGE JACK ZOUHARY

Dana Corporation,

                         Defendant.

## INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 20), Plaintiff's Opposition (Doc. No. 23), and Defendant's Reply (Doc. No. 29).[1]  This case involves alleged violations of the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), and Employee Retirement Income Security Act ("ERISA").

Prior to deciding Defendant's Motion for Summary Judgment, the Court must address two preliminary matters.  Pending are Plaintiff's Motion to Strike portions of Amber Brandeberry's ("Brandeberry") affidavit (Doc. No. 22), Defendant's Opposition (Doc. No. 27), and Plaintiff's Reply (Doc. No. 30), as well as Defendant's Motion to Strike portions of Plaintiff's affidavit (Doc. No. 28), Plaintiff's Opposition (Doc. No. 31), and Defendant's Reply (Doc. No. 32).

---

[1] Despite Plaintiff's failure to file a motion for summary judgment, he urges the Court to grant summary judgment in his favor, *sua sponte*, for his claims under the FMLA, ADA, and ERISA. The Court declines Plaintiff's invitation, as the facts presented do not warrant such a finding.

For the reasons below, Defendant's Motion for Summary Judgment is granted in part and denied in part, Plaintiff's Motion to Strike is denied, and Defendant's Motion to Strike is granted in part and denied in part.

## BACKGROUND

After employing Plaintiff for a year as a temporary worker, Defendant hired Plaintiff as a full-time balancer in 1998. At that time, Plaintiff became a member of the United Auto Workers' Union ("UAW" or "Union"), subject to the Collective Bargaining Agreement ("CBA").

The CBA entitles an employee with seniority who is unable to work due to injury or illness to sick leave not to exceed six months without renewal. The CBA requires the employee to substantiate his leave by providing "satisfactory evidence of [his] condition" within seven days of his absence[2] (Doc. No. 20., Ex. 1). If an employee "fails to procure an approved leave" within seven days, the CBA presumes that he "voluntarily quit" unless the employer finds the delay to be for "good and sufficient reasons" [3] (*id.*).

---

[2]

Article 45 of the CBA states: "An employee with seniority who is unable to work because of injury or illness shall be granted a sick leave of absence with accumulated seniority for the duration of the disability but not to exceed six (6) months without renewal . . . . A leave of absence for injury or illness must be substantiated, with satisfactory evidence of the employee's condition, as soon as possible, but no later than the seven (7) day period provided for in Article 22(5). <u>Loss of Seniority</u>. The Company will, however, consider extenuating circumstances, which prevent the timely submission of such evidence, on an individual basis."

[3]

Article 22.5 of the CBA states: "If [employee] is off work for more than seven (7) calendar days and fails to procure an approved leave of absence during such seven (7) calendar days, he will be considered as having voluntarily quit, unless his failure to secure such approval is for good and sufficient reasons."

2

The CBA also addresses Defendant's FMLA policy[4] which does not modify the notice requirements for employees seeking medical leave.

For an employee to take leave under Defendant's Short Term Disability ("STD") plan, the employee's physician must complete an STD form. Employees procure this form by downloading it from the Internet or contacting the Dana Employee Service Center ("DESC"), which then faxes the form to the employee's physician. Although Defendant's local Human Resources ("HR") Department previously faxed forms directly to an employee's physician, it no longer does so and instead relies on the DESC.

Plaintiff has a degenerative hereditary condition called familial spastic paraparesis. Plaintiff has had this condition since birth, but began experiencing symptoms about ten or fifteen years ago. His symptoms include leg shakes, jerks, spasms, cramps, and back pain. Plaintiff has an altered gait, bowed legs, and pigeon toes. He cannot walk quickly or for long distances without difficulty. Although Plaintiff initially controlled his symptoms with muscle relaxers, he stopped using them due to their unpleasant side effects and now only uses Advil to treat the condition.

Plaintiff's condition has not restricted his ability to work as a balancer, except by requiring him to take short-term medical leave when his symptoms worsened.

On April 27-28, 2006, Plaintiff failed to report to work. On May 2, 2006, he contacted Defendant's HR Department and requested that it fax STD forms to his physician, Dr. Rao. (At that time, Defendant's HR Department faxed STD forms directly to an employee's physician.) On May

---

[4]

Article 47 of the CBA states: "The Company agrees to administer all Family and Medical Leave Requests as directed under the Family and Medical Leave Act of 1993 (the 'FMLA') as that statute may be amended from time to time. In all instances of FMLA Leave, the employee will be required to exhaust one half of all remaining vacation time or five (5) Vacation days, whichever is less, prior to the implementation of unpaid time off under this provision. All FMLA questions should be referred to the Human Resources Department."

3

13, 2006, Dr. Rao submitted Plaintiff's STD forms noting that Plaintiff was unable to work from April 26, 2006 to May 8, 2006.[5]

Despite Plaintiff's failure to provide medical certification within seven days, Defendant approved his leave.  According to Defendant, it did so because Plaintiff had advised Defendant's HR Department that he was seeking short-term leave within seven days of his absence and explained the reason for providing his forms in an untimely manner.

Plaintiff applied for another leave from June 27, 2006 through July 24, 2006.  After he notified Defendant's HR Department that he was seeking leave and obtained the necessary STD forms from DESC, Defendant approved his leave.

The events underlying this lawsuit began on September 6, 2006, when Plaintiff's symptoms worsened once again.  According to Plaintiff's affidavit: "I called the employee call in line at Dana and left a message identifying myself and stating that I would need short term medical leave because I was unable to come to work" (Harrigan Aff. ¶ 10).  On September 11, 2006 and September 12, 2006, Plaintiff contacted DESC to request STD forms but could not get through due to DESC's technical difficulties.

On September 13, 2006, Plaintiff reached a DESC representative and asked that STD forms be faxed to his physician, Dr. Sanders. The STD forms never arrived, so on September 15, 2006, Plaintiff contacted DESC again and repeated his request. On September 20, 2006, Plaintiff faxed his completed medical certification to Defendant.  During Plaintiff's absence, Defendant never contacted him to inquire about the status of his absence from work.

---

[5]

Defendant contends that Dr. Rao initially indicated that Plaintiff was unable to work from May 3, 2006 to May 8, 2006 and that Dr. Rao altered the STD form after speaking to Plaintiff.  Because this issue is irrelevant to this Motion, the Court will not address it.

4

Meanwhile, by September 18, 2006, twelve days after Plaintiff's initial telephone message, Defendant had not received Plaintiff's medical documentation or any other notification as to his whereabouts.[6] Consequently, HR Manager Brandeberry followed CBA directives, found that Plaintiff voluntarily quit, and provided UAW with twenty-four hours written notice that Defendant intended to terminate Plaintiff's employment for failing to timely procure approved leave. Upon receiving Brandeberry's notice, UAW's steward told Brandeberry that he thought Plaintiff had quit.

On September 19, 2006, Brandeberry sent Plaintiff a letter advising him his employment was terminated. However, Brandeberry sent this letter to the wrong address, so Plaintiff only learned of his termination when he tried to return to work on September 25.

At the time of his termination, Plaintiff was forty-two years old.

The Union filed a grievance complaining of Plaintiff's termination, but Defendant denied the grievance due to Plaintiff's failure to follow up his first telephone message with an explanation for his absence. The Union declined to pursue Plaintiff's grievance to arbitration, and Plaintiff next filed charges of discrimination based on age and disability with the Equal Employment Opportunity Commission ("EEOC") against Defendant and the UAW. The EEOC dismissed both charges. This lawsuit followed.

---

[6]

Plaintiff asserts that he called Defendant's HR Department at some point between September 6, 2006 and September 13, 2006. He claims that he spoke to the person subbing for Brandeberry while she was on medical leave. However, Plaintiff's telephone records do not show any calls to Defendant's plant between these dates, and Plaintiff does not claim he made this call from another phone. Moreover, Brandeberry was not on leave or otherwise absent in September 2006.

## PRELIMINARY MATTERS

### Plaintiff's Motion to Strike Based on Hearsay

The Court may consider an affidavit on a motion for summary judgment if, among other requirements, it "set[s] forth such facts as would be admissible in evidence" at the time of trial. FED. R. CIV. P. 56(e). The Court cannot consider statements in an affidavit if they are inadmissible hearsay. *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

Plaintiff contends that two statements in Brandeberry's affidavit constitute inadmissible hearsay which the Court must strike. *See Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2000).

First, Plaintiff moves to strike Brandeberry's statement: "The Union Steward told me he thought Mr. Harrigan had quit. The Union Steward told me that they tried to call Harrigan about the notice but could not reach him" (Brandeberry Aff. ¶ 10).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Here, Defendant does not offer the union steward's statement to prove the truth of the matter asserted; namely, that Plaintiff quit or the UAW could not reach him. Instead, it offers his statement to prove Brandeberry's motive and state of mind: specifically, that Brandeberry did not know that Plaintiff was seeking STD leave. Regardless of its truth, the statement supports Defendant's claim that Brandeberry did not know the reason for Plaintiff's absence. Therefore, the statement is admissible.

Plaintiff also seeks to exclude Brandeberry's statement: "I did not hear from Mr. Harrigan in response to the notice" (Brandeberry Aff. ¶ 10). This statement is not hearsay, but rather an admissible firsthand statement.

6

Therefore, the Court denies Plaintiff's Motion, as neither challenged statement constitutes inadmissible hearsay.

### Defendant's Motion to Strike Based on Conflicting Testimony

A post-deposition affidavit is inadmissible if it directly contradicts the non-moving party's prior sworn testimony. *Aerel*, *S.R.L. v. PCC Airfoils*, *L.L.C.*, 448 F.3d 899, 908-09 (6th Cir. 2006). However, when an attorney has "not directly questioned" the deponent about an issue, the party should not be prevented from "fill[ing in] a gap left open by the moving party." *Id*. at 907.

Defendant asks the Court to strike Paragraphs 4, 10, and 23 of Plaintiff's affidavit, claiming that these statements contradict Plaintiff's previous sworn deposition testimony.  Because Paragraphs 4 and 10 of Plaintiff's affidavit do not directly contradict his deposition, the Court denies Defendant's Motion as to these statements. However, Defendant's Motion is granted as to Paragraph 23.

Defendant seeks to strike Paragraph 4 of Plaintiff's affidavit, where he states: "[D]ue to the hard concrete floors at Dana, I requested a rubber mat to stand on while I worked at my machine" (Harrigan Aff. ¶ 4). Defendant contends that this directly contradicts the following deposition testimony (Harrigan Dep., pp. 27-28):

> Q. Was there anytime during your employment at Dana that you asked for any changes in the way you did your job?
> A. No. No.
>
> Q. Did you ever ask for any kind of an accommodation?
> A. A rubber mat.
>
> *   *   *
>
> Q. Okay. Is that something you asked for or is it just something they had?
> A. They supplied that.

7

Although it is not entirely clear whether Defendant always provided rubber mats or whether it did so to accommodate Plaintiff, Plaintiff's affidavit does not contradict his deposition. In both forms of testimony, Plaintiff states that he requested a rubber mat. As such, the Court will not strike Paragraph 4 of his affidavit.

Next, Defendant attacks Paragraph 10 of the affidavit which states: "I called the employee call in line at Dana and left a message identifying myself and stating that I would need short term medical leave because I was unable to come to work" (Harrigan Aff. ¶ 10).   Defendant asserts that this statement directly contradicts earlier deposition testimony (Harrigan Dep., p. 55):

> Q.   Who'd you call at work?
> A.   You get the recording. I got to leave a message.
>
> Q.   Okay, and what message did you leave?
> A.   Short term I think I said.
>
> Q.   What do you specifically recall about what you --
> A.   Do I specifically recall? I don't remember.

When a plaintiff claims a complete loss of memory during his deposition, but later describes significant details in his affidavit, courts often strike the affidavit as conflicting testimony. *See Reid v. Sears*, *Roebuck & Co.*, 790 F.2d 453, 459-60 (6th Cir. 1986) (striking plaintiff's affidavit statement that the Sears representative told her the "main reasons" Sears discharged its employees were falsification of time cards, excessive tardiness or absences, and theft, because in her deposition, plaintiff only remembered the Sears representative telling her that she could be fired for punching someone else's time card); *Smith v. Consol. Rail Corp.*, No. 95-3727, 1996 WL 366283, at *1 (6th Cir. 1996) (finding a contradiction when plaintiff testified in his deposition that he did not know why he tripped, but then later stated in his affidavit that "the site of his accident was filled with debris, vegetation, and loose pieces of ballast, and that . . . one of those items caused [his] injuries").

Unlike *Reid* and *Smith*, Plaintiff here does not claim a complete lack of knowledge or recollection during his deposition, while subsequently providing a definitive affidavit with new information.  In his deposition, Plaintiff recalled that he said "[s]hort term I think," which includes the essence of the information in his affidavit. Although Plaintiff's deposition testimony is not as artfully expressed as his affidavit, such a discrepancy is not a contradiction, but rather goes to weight, not admissibility.

Finally, Defendant moves to strike Paragraph 23 of Plaintiff's affidavit, which states: "I am aware of substantially younger, less qualified employees who were either hired by Dana or reassigned to my position after I was terminated.  I was also involved in training substantially younger employees to perform my job duties prior to my termination" (Harrigan Aff. ¶ 23).  During Plaintiff's deposition, the following exchange took place (Harrigan Dep., pp. 75-76):

> Q.   You've also alleged that you were terminated because of your age. Do you believe that?
> A.   Yeah but no -- yeah. I don't know. Yeah.
>
> Q.   Okay. Why do you think that you were terminated?
> A.   I don't know. Why do I think it? Just -- I don't know.
>
> *  *  *
>
> Q.   Do you contend that people younger than you were treated differently?
> A.   I don't know.

By stating in his affidavit that Defendant prefers younger and less qualified employees, Plaintiff makes a self-serving conclusion directly contradicting his deposition testimony.  Plaintiff's detailed affidavit, explaining his own training of younger employees, directly contradicts his deposition when he failed to support his claim of age discrimination.  *See Smith*, 1996 WL 366283, at *1; *Reid*, 790 F.2d at 460 ("If such a statement had been made she was required to bring it out at

the deposition and could not contradict her deposition testimony in a subsequent affidavit."). Thus, the Court grants Defendant's Motion to Strike Paragraph 23 of Plaintiff's affidavit.

## DISCUSSION

### Standard of Review

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the record contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### FMLA

FMLA permits an eligible employee to take up to twelve weeks of unpaid leave during a twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1).  It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Id.*

Plaintiff claims Defendant violated two distinct theories under FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

10

**FMLA Interference**

To establish a claim for FMLA interference, Plaintiff must show that: (1) he was eligible for FMLA protection; (2) his employer was covered by FMLA; (3) he was entitled to leave under FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him an FMLA benefit to which he was entitled.  *See*, *e.g.*, *Cavin v. Honda of Am. Mfg., Inc*., 346 F.3d 713, 719 (6th Cir. 2003); *Morr v. Kamco Indus., Inc*., 548 F. Supp. 2d 472, 477 (N.D. Ohio 2008).

The parties do not dispute that Plaintiff was an eligible employee, Defendant was a covered employer, or, for the purposes of this Motion, Plaintiff had a serious health condition in September 2006 and was entitled to take leave.  Further, by terminating Plaintiff, Defendant interfered with his rights under the FMLA.  *See Killian v. Yorozu Auto. Tennessee, Inc*., 454 F.3d 549, 556 (6th Cir. 2006) (finding that by terminating employee, employer "interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1)").  That leaves only the question whether Plaintiff provided Defendant with sufficient notice of his intent to take leave.  Construing the facts in the light most favorable to Plaintiff, the Court denies Defendant's Motion for Summary Judgment as to this claim.

**1.     Notice**

Under FMLA, an employee must provide his employer with timely and substantively sufficient notice of his intent to take leave.  For unforeseeable leave, the employee must notify his employer "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "[E]xcept in extraordinary circumstances where notice is not feasible," this translates to "no more than one or two working days of learning of the need for leave." *Id*.

When determining whether an employee's notice was substantively sufficient, "the critical question is whether the information imparted to the employer was sufficient to reasonably apprise it

11

of the employee's request to take time off for a serious health condition." *Brohm v. JH Props.*, *Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) (internal citations omitted); *Brock v. United Grinding Tech.*, *Inc.*, 257 F. Supp. 2d 1089, 1100 (S.D. Ohio 2003) (noting that employee must give some indication that his leave is potentially covered by FMLA). However, the employee need not "expressly assert rights under the FMLA or even mention the FMLA." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005).

The Sixth Circuit has declined to provide categorical rules determining what constitutes notice. Instead, "what is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Cavin*, 346 F.3d at 723-24.

Here, Plaintiff left Defendant a telephone message on September 6, 2006, the first day of his absence, rendering his notification timely. Whether the message provided "substantively sufficient" notice is a close call, but the message did, at the very least, include the phrase "short term" which allows the inference Plaintiff was not merely sick, but had a condition that necessitated a longer absence. *Cf. Walton*, 424 F.3d at 487 ("sick" does not imply a serious health condition).

Moreover, Plaintiff took STD leave on two other occasions within six months of his September 2006 absence. Thus, by invoking the phrase "short term," a reasonable jury could conclude that Plaintiff linked his current need for leave to his impairment for which he previously took STD leave. The fact that Defendant knew of Plaintiff's previous leave and his impairment adds support for denying summary judgment. *Fritz v. Phillips Serv. Indus., Inc.*, 555 F. Supp. 2d 820, 834 (E.D. Mich. 2008) ("[W]here the employer has prior knowledge of the plaintiff-employee's serious health condition, there is a burden on the employer to inquire further whenever the employee calls in sick for medical reasons to determine if those reasons were FMLA-qualifying.").

Unlike May 2006, when Plaintiff complied with Defendant's protocol for requesting STD leave by contacting Defendant's HR Department and explaining his delay in providing medical certification, by September 2006 Defendant had modified its policy to now require requests be made through DESC instead of the HR Department.  Plaintiff's September telephone call raises a genuine issue of material fact as to whether he provided adequate notice of his need for FMLA leave.  *See Brown v. Ohio Youth Advocate Program, Inc.*, No. 2:04-CV-122, 2005 WL 1982325, at \*5 (S.D. Ohio Aug. 17, 2005) (noting that the "content and timing of a notice is a question of fact").

### 2.  Unlawfully Stringent Policy

There is also an issue of fact as to whether Defendant imposed a requirement more stringent than FMLA and then terminated Plaintiff for failing to meet this requirement.  If so, Defendant's action "would constitute impermissible interference with Plaintiff's exercise of [his] rights under the FMLA." *McClain v. Detroit Entm't., L.L.C.*, 458 F. Supp. 2d 427, 437 (E.D. Mich. 2006).

Although federal regulations enable employers to "require an employee to comply with [its] usual and customary notice and procedural requirements for requesting leave," 29 C.F.R. § 825.302(d), the Sixth Circuit has held that "FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." *Cavin*, 346 F.3d at 720.  Therefore, if an employee properly invokes FMLA, his employer's internal policies do not apply to the extent that they conflict with or are more stringent than FMLA requirements. *See Cavin*, 346 F.3d at 723; *Walton*, 424 F.3d at 486; *Maynard v. Total Image Specialists, Inc.*, 478 F. Supp. 2d 993, 1000 (S.D. Ohio 2007); *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 463-64 (D.N.J. 2001) ("[W]here an employer's internal policies conflict with the provisions of the FMLA,

13

the FMLA controls and an employee need only comply with the requirements of the Act to invoke its protections.").

Here, Defendant's policy requires employees to submit medical documentation within seven days of an absence whereas FMLA allows up to at least fifteen days once an employee requests certification. 29 C.F.R. § 825.305.

Plaintiff submitted his medical documentation on September 20, 2006, fourteen days after his September 6, 2006 absence, thereby complying with the FMLA-established timeframe.  To the extent Defendant's policy conflicts with 29 C.F.R. § 825.305, it is unlawful.  *See Killian*, 454 F.3d at 555 (invalidating employer's policy requiring certification within six days); *Marrero*, 164 F. Supp. 2d at 464 (striking company policy requiring doctor certification within five days).[7]

### FMLA Retaliation

Plaintiff also claims that Defendant retaliated against him for exercising his FMLA rights. To establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in an activity protected by the FMLA; (2) Defendant knew that Plaintiff engaged in this activity; (3) Defendant, thereafter, took an employment action adverse to Plaintiff; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Killian*, 454 F.3d at 556 (*citing Arban v. West Publ'g Corp*., 345 F.3d 390, 404 (6th Cir. 2003)).

---

[7] There is Sixth Circuit precedent suggesting that even if Plaintiff failed to provide certification in a timely manner, Defendant's remedy was delaying Plaintiff's leave, not termination. *See Killian*, 454 F.3d at 555 (concluding that an employer may not terminate an employee for failure to provide medical certification in a timely manner).  However, there is also Sixth Circuit precedent suggesting otherwise. *See Frazier v. Honda of Am. Mfg.*, 431 F.3d 563, 567 (6th Cir. 2005) (finding termination to be an appropriate remedy for the tardy submission of a medical certification); *Spencer v. Marygrove Coll.*, No. 07-cv-11135, 2008 WL 4056319, *10 (E.D. Mich. 2008) ("So far as this Court can tell, the rule pronounced in *Frazier*–that termination is an appropriate remedy for the tardy submission of a medical certification form–is in direct conflict with [*Killian*,] a Sixth Circuit case decided less than eight months after *Frazier*.").  The Court need not enter this fray.

If Plaintiff establishes a prima facie case, "the burden shifts to [Defendant] to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action.  If [Defendant] succeeds, the burden shifts back to [Plaintiff] to show that [Defendant's] proffered reason is a pretext for unlawful discrimination."  *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

### 1.    Prima Facie Case

Plaintiff satisfies three of the required elements for a prima facie case of FMLA retaliation (protected activity, adverse action, and causal connection); and raises an issue of fact on the fourth element (whether Defendant knew that Plaintiff engaged in protected activity).

Plaintiff engaged in a protected activity; as previously explained, Plaintiff's September 6, 2006 telephone message constituted a request for leave.  Further, Plaintiff suffered an adverse employment action because Defendant terminated his employment.  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (finding termination of employment to be a materially adverse employment action).

Plaintiff also establishes a causal connection between his protected activity and adverse employment action because only two weeks elapsed between Plaintiff's telephone message on September 6, 2006 and his termination on September 19, 2006. *See Bryson*, 498 F.3d at 571 (finding that three months between plaintiff's request for leave and termination satisfies the prima facie case of retaliation); *Chandler v. Speciality Tires of Am. (Tennessee), Inc.*, 283 F.3d 818, 826 (6th Cir. 2002) (stating in FMLA context, "[p]roximity in time can raise a prima facie case of retaliatory discharge").

However, there remains a question of fact on Defendant's knowledge.  Plaintiff offers evidence that Defendant knew that Plaintiff engaged in a protected activity.  Defendant acknowledges

that it received a phone message from Plaintiff, but denies that Plaintiff sought leave for a potentially FMLA-qualifying reason.  Furthermore, during Brandeberry's conversation with the UAW steward, the steward opined that he believed Plaintiff quit, providing additional evidence that Defendant did not know the reason for Plaintiff's absence.  The disputed record of what Defendant knew leaves open the question of whether Plaintiff can establish a prima facie case.

### 2.      Burden Shifting

Nonetheless, even if Plaintiff successfully establishes a prima facie case for retaliation, his claim would still fail because Defendant articulates a nondiscriminatory explanation for terminating Plaintiff, which Plaintiff cannot show to be pretextual.

Defendant meets its burden of proffering a nondiscriminatory explanation; it terminated Plaintiff for failing to comply with its internal leave policy which required employees to substantiate their leave within seven calendar days of an absence. *See*, *e.g.*, *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 735 (N.D. Ohio 2008) (finding that violating a company policy constitutes a legitimate nondiscriminatory reason for disciplining an employee).  There is no evidence that Defendant implemented this policy to discharge Plaintiff for seeking leave, as Defendant's policy applied to all employees.

This Court's finding that Defendant's policy imposed an impermissible strict requirement does not invalidate Defendant's proffered explanation. *See McClain*, 458 F. Supp. 2d at 438 (finding defendant's leave policy to impose unlawfully stringent requirements, and then determining defendant's reliance on such policy to constitute a legitimate, nondiscriminatory reason for its action).

Here, although Defendant's reliance on its policy was mistaken and unlawful, it is still a nondiscriminatory explanation. *See id.* ("[I]t is one thing to conclude that an employer's policy

16

violates the substantive provisions of the FMLA, and another to say that the employer has applied this policy for an impermissible retaliatory purpose.").

Thus, the burden shifts to Plaintiff to prove Defendant's stated reason is mere pretext. To establish pretext, Plaintiff must show that Defendant's proffered reason: (1) had no basis in fact; (2) did not actually motivate the adverse employment decision; or (3) was insufficient to motivate the adverse employment decision. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff urges the Court to find Defendant's reason pretextual because it had no basis in fact and did not actually motivate his discharge. The Court disagrees on both counts.

Defendant's proffered explanation has a basis in fact. It is clear that Plaintiff did not substantiate his leave with medical certification within seven days of his absence or speak to Defendant's HR Department during this time. As such, Plaintiff cannot establish pretext under this theory.

Next, Plaintiff asserts that his failure to follow company policy did not actually motivate his termination. Plaintiff points to the fact that Defendant approved his leave in April and May, despite his failure to comply strictly with Defendant's seven-day deadline. Such argument is unpersuasive, as it fails to take into account Plaintiff's proactive telephone call to Defendant's HR Department explaining why the forms were delayed.

For the same reasons, Plaintiff's reliance on *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784 (6th Cir. 1998) is misplaced. In *Cehrs*, the employee raised a genuine issue of material fact as to whether the employer's stated reason for terminating the employee was pretextual. The employer cited the employee's failure to "submit the medical leave forms in advance" of her medical leave as the reason for her termination, despite "routinely distribut[ing] these forms

17

after-the-fact." *Id*. at 784.  Thus, the Sixth Circuit found that the employee "reasonably relied on this custom and practice" when she failed to provide a form requesting an extension of her leave.  *Id*.

Unlike *Cehrs*, Defendant here did not "routinely" allow individuals to take leave without following its company policy.  Although Defendant extended its deadline to submit medical certification on some occasions, it did this only if the employee contacted the HR Department to explain the reason for the delay.  In fact, during Plaintiff's previous medical leaves, Plaintiff contacted the HR Department, notified it of his absence, and sought an extension to return his STD forms.  Because of Plaintiff's continuous communication, Defendant permitted Plaintiff to submit the forms after the seven-day deadline.  In September 2006, Plaintiff never sought an extension to submit his medical forms. He had no communication with Defendant after his message on September 6, 2006.

Plaintiff also argues that his delay was due largely to technical difficulties at the DESC and doctor's office.  This argument, too, is unpersuasive.  As the employee requesting leave, Plaintiff bears the burden of ensuring that his forms are submitted in a timely manner, or at the very least contacting Defendant's HR Department to explain the delay.

Moreover, Defendant's reliance on an unlawful policy does not render its actions pretextual. As recently explained in a Sixth Circuit opinion, so "long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Sybrandt v. Home Depot, U.S.A., Inc*., No. 08-5598, 2009 WL 775430, at * 5 (6th Cir. 2009) quoting *Majewski v. Auto. Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001).

"The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of

18

action." *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (citations and internal quotation marks omitted); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Here, Defendant made a reasonably informed and considered decision by speaking to UAW's steward and providing the UAW with twenty-four hours written notice prior to terminating Plaintiff. Defendant also waited fourteen days from Plaintiff's first absence to terminate his employment, a week longer than the CBA required. Thus, the Court finds that Defendant proffered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff cannot prove it to be pretextual.

### ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Where, as here, Plaintiff seeks to establish discrimination through indirect evidence, the Court requires Plaintiff to establish a prima facie case, followed by the *McDonnell Douglas* burden-shifting analysis.  *McDonnell Douglas Corp. v. Green*, 411 US. 792 (1973).

### Prima Facie Case

To establish a prima facie case of discrimination under the ADA, Plaintiff must show that he: (1) is disabled; (2) is qualified to perform his essential job functions with or without accommodation; and (3) suffered an adverse employment action because of his disability.  *McKay v. Toyota Motor Mfg., U.S.A., Inc*., 110 F.3d 369, 371 (6th Cir. 1997).

19

Plaintiff fails to establish a prima facie case as he cannot show that he has an ADA-defined disability or that Defendant terminated him because of such disability.

### 1.  Disabled

Under ADA, "disability" means "a physical or mental impairment that substantially limits one or more of the major life activities," "a record of such impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(2).

Plaintiff asserts he is disabled because his familial spastic paraparesis substantially limits his ability to walk and work.  He also contends that he has a record of a disability, and that Defendant regarded him as disabled.  The Court disagrees with each assertion.

### (a) *Actually Disabled*

ADA defines "disability" as a substantial limitation in at least one "major life activity" which, in turn, is defined illustratively in the corresponding regulations as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

An individual is substantially limited in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2 (j)(i),(ii).

Plaintiff claims he is substantially limited in his ability to walk because of his leg shakes, cramps, jerks, and spasms.  As a consequence of these symptoms, combined with his pigeon toes, bowed legs, and back pain, Plaintiff cannot walk quickly, walk for long distances, or run.  However,

these limitations do not render an individual disabled.  *See Black v. Roadway Express, Inc.*, 297 F.3d 445, 451 (6th Cir. 2002) (inability to walk for a prolonged time is not a substantial limitation); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (the need to walk slowly does not rise to the level of a disability); *Latterly v. Borden Chem., Inc.*, 24 F. App'x. 471, 472 (6th Cir. 2001) (plaintiff lacked a substantial impairment, despite having difficulty walking and walking at a slower pace than others).

Moreover, Plaintiff's condition does not prevent him from helping his father with yard work, biking, fishing, golfing, shopping, or taking care of his basic needs.  He can walk without assistance, and returned to work following his medical leaves without any restriction on his ability to walk.  As such, Plaintiff's limitations, like others found in case law, are not substantial.  *See Penny*, 128 F.3d at 415 (moderate difficulty or pain experienced while walking does not rise to the level of a disability); *Vass v. Reister & Thesmacher Co.*, 79 F. Supp. 2d 853, 860-61 (N.D. Ohio 2000) (an individual not substantially limited despite the fact that he wears a knee brace, experiences pain walking up and down stairs, and can only stand for thirty-minute intervals without discomfort).

Plaintiff also asserts that his impairment substantially limits his ability to work. The Court disagrees. To establish a substantial limitation in working, an individual must show that he is "significantly restricted in ability to perform either a class of jobs or a broad range of jobs in various classes."  29 C.F.R. § 1630.2 (j)(3)(I).

Not only has Plaintiff failed to establish that he cannot perform a broad class of jobs, he has failed to establish that he cannot perform his particular job.  He testified that his impairment has never limited his ability to work or restricted his employment in any way.  Because Plaintiff has not

provided any evidence to support his contention that he faces substantial limitations in the major life activity of working or walking, the Court concludes that he is not disabled as a matter of law.

### (b) *Record of a Disability*

Plaintiff contends, alternatively, that he has raised a genuine issue of material fact as to whether he had a record of a disability.  In so arguing, Plaintiff must show he has "a history of, or has been misclassified as having, a mental or physical impairment that *substantially limits* one or more major life activities." *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002) (emphasis supplied).  He fails here as well.

Despite having a record of an impairment, Plaintiff has not presented any evidence to suggest that his impairment substantially limited one or more major life activities. As such, Plaintiff is not covered by ADA as an individual with a record of a disability.

### (c) *Regarded As Disabled*

In the alternative, Plaintiff asserts that Defendant regarded him as having a disability.  To be disabled under the "regarded as" prong, Plaintiff must establish that Defendant regarded him as having an impairment that substantially limits a major life activity. *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005).

Simply because Defendant knew of Plaintiff's condition does not mean that Defendant regarded Plaintiff as having a substantial limitation in a major life activity. The only evidence proffered by Plaintiff is that his supervisor, Chuck Smith, inquired into his condition and noted that it seemed to be getting worse.  A reasonable jury could not infer from this isolated comment that Smith perceived Plaintiff to be substantially limited in any major life activities.  Moreover, Smith did

22

not participate in the HR Department's decision to terminate Plaintiff's employment.  Thus, the Court concludes that Defendant did not regard Plaintiff as disabled.

### 2.        Termination

Even if Plaintiff had a disability, his ADA claim must fail because he provides no evidence that Defendant terminated him because of his disability.  Plaintiff concedes he has had his impairment the entire time that he has worked for Defendant.  Thus, Plaintiff fails to meet his burden of establishing a prima facie case of employment discrimination under ADA.

### Burden Shifting

Because Plaintiff failed to establish his prima facie case, there is no need to apply the burden-shifting scheme.  However, even if the Court had determined that Plaintiff established his prima facie case, his ADA claim still fails.  For the same reasons discussed with regard to Plaintiff's retaliation claim under FMLA, Defendant articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment which Plaintiff failed to show was pretextual.

### Failure to Accommodate

In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff claims Defendant failed to accommodate his disabilities by neglecting to provide him with medical leave.  To the extent he is asserting this claim, it cannot proceed because he is not disabled under ADA.

## ADEA

ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  Because Plaintiff provides no direct evidence that Defendant discriminated against

him based on age, the Court employs the *McDonnell Douglas* test to evaluate his claim.  *See Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 410 (6th Cir. 2008).

**Prima Facie Case**

To establish a prima facie case of age discrimination, Plaintiff must show that he was: (1) a member of the protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) replaced by someone outside of the protected class.  *Id.*  Plaintiff can also satisfy the fourth prong by showing that he "was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ*., 389 F.3d 177, 181 (6th Cir. 2004).

Here, the fourth prong is the only one in dispute. The Court finds that Plaintiff fails to raise a genuine issue of material fact as to this requirement, and grants Defendant's Motion for Summary Judgment on the ADEA claim.

Defendant indicates it did not replace Plaintiff with someone outside the protected class, explaining that the CBA requires Defendant to fill Plaintiff's position with the most senior bidder. Plaintiff has not rebutted this claim, and the only evidence he submits is Paragraph 23 of his affidavit, which the Court struck.

Even if the Court had not stricken this paragraph, Plaintiff still fails to raise a genuine issue of material fact as to whether Defendant replaced him with someone, or treated him differently than, similarly situated employees, outside his protected class. The stricken paragraph contains only a self-serving, unsubstantiated general averment, insufficient to create a genuine issue of material fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990) (finding that general averments or conclusory allegations of an affidavit do not create a specific fact dispute for summary judgment purposes).

24

**Burden Shifting**

Because Plaintiff fails to establish his prima facie case, there is no need to apply the burden-shifting scheme.  However, even if the Court had determined that Plaintiff establishes a prima facie case, his ADEA claim would still fail.  For the same reasons discussed with regard to Plaintiff's retaliation claim under FMLA, Defendant articulated a legitimate nondiscriminatory reason for terminating Plaintiff's employment which Plaintiff fails to show was pretextual.

**Interference with ERISA**

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."  29 U.S.C. § 1140.

To state a claim under Section 510, Plaintiff must demonstrate that Defendant had a "specific intent to violate ERISA" through either direct evidence or through the burden-shifting approach used in employment discrimination cases. *Schweitzer v. Teamsters Local 100*, 413 F.3d 533, 537 (6th Cir. 2005); *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997).

**Prima Facie Case**

To establish a prima facie case, Plaintiff must show "the existence of (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employer may be entitled." *Schweitzer*, 413 F.3d at 537 (*quoting Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)).  Moreover, "to survive a defendant's motion for summary judgment, the plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid pension liability was a determining factor in the plaintiff's discharge."

25

*Schweitzer*, 413 F.3d at 537 (*quoting Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1044 (6th Cir. 1992)).

The Court grants Defendant's Motion for Summary Judgment because Plaintiff cannot show that Defendant acted for the purpose of interfering with his benefits.

Plaintiff claims that because he is entitled to a greater percentage of benefits the longer he is employed, he has demonstrated Defendant's specific intent to interfere with his benefits. In *Schweitzer*, 413 F.3d at 539, the Sixth Circuit rejected a similar argument, explaining that "[t]o hold otherwise would allow every employee discharged by a company with an ERISA plan to have a claim under § 510." (internal citations omitted).

Plaintiff also tries, unsuccessfully, to show Defendant's specific intent by pointing to the temporal proximity between his termination and the vesting of his benefit plans. Plaintiff contends that he will be entitled to a large life insurance policy, long-term disability benefits, and retirement under Defendant's health and welfare plans. However, there is no indication that such benefits would vest in the near future -- the fact these benefits might vest sometime in the distant future is insufficient to prove specific intent. *See Peterson v. Gen. Motors Corp.*, No. 05-CV-74862, 2008 WL 108886, at *5 (E.D. Mich. Jan. 7, 2008) (concluding defendant did not violate ERISA, despite terminating plaintiff two years before a large portion of his benefits vested); *cf. Humphreys*, 966 F.2d at 1043 (plaintiff satisfied his prima facie case because he became entitled to benefits two months after his adverse action).

Without providing any evidence enabling a reasonable jury to infer otherwise, the Court finds Plaintiff failed to raise a genuine issue of material fact as to whether Defendant's desire to interfere with Plaintiff's benefits was a motivating factor in its decision to terminate his employment. *See*

26

*Washington v. Comcast Corp.*, No. 06-10143, 2007 WL 162186, at *7 (E.D. Mich. Jan. 17, 2007) (finding plaintiff's allegation that defendant "wanted to get rid of her because her medical benefits were too expensive [did] not establish[] a causal link between her claim that she was on approved leave and her termination").

### Burden Shifting

Because Plaintiff fails to establish his prima facie case, there is no need to apply the burden-shifting scheme.  However, even if Plaintiff had successfully demonstrated his prima facie case, his ERISA claim would fail as a matter of law.  As it did to rebut Plaintiff's FMLA retaliation, ADA and ADEA claims, Defendant meets its burden by contending that it did not terminate Plaintiff to interfere with his ERISA benefits, but rather because he violated established company policy.  And for the same reasons that Plaintiff failed to previously establish pretext, Plaintiff cannot demonstrate that Defendant's proffered reasons are pretext to cover impermissible discrimination.

### CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is denied with respect to the FMLA interference claim; and granted with respect to the FMLA retaliation, ADA, ADEA, and ERISA claims.

IT IS SO ORDERED.

       ___*s/ Jack Zouhary*____
       JACK ZOUHARY
       U. S. DISTRICT JUDGE

       March 31, 2009